UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Sono Irish, Inc., d/b/a Nibils, | ) | Civil Action No.: 4:13-cv-00249-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Town of Surfside Beach; Edwin L. Booth; | ) | |
| Cecil Chandler; and William Rempfer; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on motions for summary judgment [ECF## 64, 65, 66, and 72] filed by Defendants, Town of Surfside Beach, Edwin L. Booth, Cecil Chandler, and William Rempfer. Plaintiff, Sono Irish, Inc. d/b/a Nibils, initially filed this action in state court. Defendant Town of Surfside Beach removed the case to this Court on January 25, 2013 under 28 U.S.C. § 1331. Plaintiff's complaint alleges multiple causes of action under federal law and 42 U.S.C. § 1983, as well as some state law claims, specifically: 1) denial of equal protection under the law; 2) denial of substantive due process; 3) denial of procedural due process; 4) takings; 5) tortious interference with contractual relations - violation of property rights under color of law, Title 42, § 1983; and 6) civil conspiracy. Defendants have moved for summary judgment as to all causes of action. A hearing was held on the pending motions on April 22, 2015. Most of Plaintiff's federal claims rise or fall on the existence, or in this case, the non-existence of a "constitutionally protected property interest" as determined under federal law.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a) (2010).  "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v.

Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the

evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

   "Once the moving party has met [its] burden, the nonmoving party must come forward with

some evidence beyond the mere allegations contained in the pleadings to show that there is a

genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The

nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory

allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875.  Rather, the

nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions,

interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### **Factual Background**

   From approximately April 1988 through December 31, 2010, Plaintiff, Sono Irish, Inc. d/b/a

Nibils, leased the restaurant located on the pier in the Town of Surfside Beach, South Carolina.

This case involves Plaintiff's attempts to obtain from the Town of Surfside Beach an extension or

2

renewal of the pier restaurant lease, which was due to expire on December 31, 2010.

In 1988, John and Maureen Cahill, the sole owners of Sono Irish, Inc. d/b/a Nibils and hereinafter described as "Plaintiff," entered into an agreement with private landowners to lease a restaurant space located on the Surfside Beach Pier. Plaintiff named the restaurant Nibils. In 2001, the Cahills signed a new lease, replacing the 1988 lease. The 2001 lease provided for an initial lease period of March 1, 2006 through December 31, 2006 with an option period of January 1, 2007 through December 31, 2010. The lease did not provide for any options after December 31, 2010.

In 2008, the Town of Surfside Beach acquired the pier. The Town took over as the landlord in relation to the Plaintiff's original lease, which expired on December 31, 2010, making the Town Plaintiff's landlord for the final 27 months of its lease.

In 2007, Defendant Edwin L. Booth was hired as Town Administrator for the Town of Surfside Beach. Plaintiff alleges that Booth wanted to operate the pier restaurant himself and used his position as Town Administrator to force Plaintiff out. Plaintiff alleges that Booth, as the Town Administrator, began a campaign to harass and intimidate Nibils, which evolved and continued through the bidding process for the pier restaurant itself.[1] Plaintiff alleges several incidents where Booth allegedly disrupted Plaintiff's business by installing parking meters in the parking lot and removing the restaurant sign. These alleged incidents preceded the non-renewal of the lease and the Plaintiff makes no federal claims regarding them.

On December 29, 2009, John Cahill wrote a letter to Town Council and former Town Administrator, Defendant Booth, noting that their lease expired on December 31, 2010. Cahill

---

[1] Numerous statements attributable to Booth prior to his resignation as Town Administrator are alleged to support his personal interest in the pier restaurant lease and his motive to obtain the lease. Regardless of any state law claims that may exist against Booth personally, this Court must focus on the federal claims that are the basis of federal jurisdiction.

3

indicated they were "interested in renewing the lease on terms that are acceptable to both the Town and us." [ECF# 64-4, Cahill Letter - Dec. 29, 2009]. He then stated that if the Town does not wish to renew the lease, they would be "glad" to discuss selling Nibils to the Town. *Id*. This included an offer for the Town to buy out the remaining time on the lease.

On February 23, 2010, a council meeting was held and council members discussed the pier restaurant lease and inquired to their legal counsel, Attorney Michael Smith, whether the lease needed to be put out for bid submissions. On February 26, 2010, Attorney Smith wrote the Town a letter and advised that the South Carolina Consolidated Procurement Code, S.C. Code Ann. § 11-35-10 and Town Code of Ordinances, Chapter 2, Article VI, § 2-208 required the lease to be let out for formal bidding procedures and "failure to do so would be a violation of Town Code and State law." [ECF# 64-5, Smith Letter - Feb. 26, 2010].

Plaintiff alleges generally that Booth used his position as Town Administrator to convince Town Council to use the RFP/bidding process rather than negotiate directly with Plaintiff on the renewal of Plaintiff's existing lease, and only did so to further Booth's own personal and undisclosed interest in obtaining the lease for himself.

Plaintiff alleges that the Town's Attorney became a strong ally and advocate on Booth's behalf, helping not only to convince Council that it had no choice but to let the lease out for bids, but also enabling Booth to keep at least Councilmen Samples and Childs (both council members were supporters Plaintiff) unaware of the fact that he had renegotiated another tenant's lease, the Pier Outfitters lease, without the necessity of bidding. Plaintiff, however, has alleged no claim

4

against the Town Attorney, individually.[2]

At its regular meeting on March 9, 2010, the Town voted unanimously to accept the recommendation[3] of the Town Attorney for the restaurant lease to be let out for bids using a publicly advertised request for proposal (RFP). [ECF# 84-12, Town Minutes, March 9, 2010 regular meeting, pg. 9].

Plaintiff further argues that this was not an "expenditure" of funds and, that there was no "procurement," and therefore no procurement code was applicable or necessary to be followed as advised by Attorney Smith.  They also argue that *Colleton County Taxpayers Assoc. v. School District of Colleton County*, 638 S.E.2d 685 (S.C. 2006), held that if there is no expenditure of funds then the procurement code does not apply.  Plaintiff argues that Attorney Smith's advice to Town Council was wrong on the basis of the *Colleton County* case, and that no RFP was necessary.[4]

---

[2]    At the hearing, Plaintiff's counsel indicated that because Surfside Cafe's bid was also disqualified by Town and Town Attorney Smith, Plaintiff is not claiming Smith was part of an alleged conspiracy. There is no evidence that Attorney Smith stood to gain from any of Booth's alleged activities.  Plaintiff simply disagreed with the advice Attorney Smith gave to Town Council as to whether they should follow procurement procedures.

[3]    This recommendation is supported by the S.C. Attorney General's opinion letter of January 14, 2011, which states:

> This office concurs with the conclusions reached by the town attorney for Surfside Beach, Michael T. Smith; he has provided very able counsel to the Town of Surfside Beach's Town Council and Mayor.  We share in his conclusion that the Town of Surfside Beach must follow its normal procurement policies, found in Chapter 2 of the Town of Surfside Beach Code of Ordinances, in seeking a tenant for the Surfside Pier.  Where the town is acting as a commercial landlord of property, the town must seek tenants and lease renewals through its procurement procedures, including a publicly advertised RFP. *See*, Town of Surfside Beach Code of Ordinances §§ 2-201, 2-208 and 2-209. [ECF# 64-14, Attorney General Office letter - January 14, 2011].

[4]    While *Colleton County* makes the statement that the procurement code does not apply to agreements that do not involve the expenditure of public funds, that case dealt with a school district's specific procurement code, not the S.C. Consolidated Procurement Code.  But regardless, the Town Attorney's advice was clearly supported by the Attorney General's opinion letter of January 14, 2011 [ECF# 64-14, Attorney General Office letter - January 14, 2011].  Further, and importantly, council unanimously voted to use an RFP rather than negotiating directly with the Plaintiff, and this was done on advice by the Town's attorney.  This was not done by Booth's authority.  While Booth may have advocated

5

The purpose of an RFP and procurement code, as generally summarized in the S.C. Attorney General's opinion, is to ensure fair and equitable treatment for everyone who deals with a government entity and to invite competition, guard against favoritism, extravagance, corruption, or fraud in awarding government contracts and to benefit the taxpayers.[5] [ECF# 64-14, Attorney General Office letter - January 14, 2011].

On April 15, 2010, the Town issued a Request for Proposal "RFP" soliciting bids for the lease of the Surfside Beach Pier restaurant.   The RFP stated "[t]he Town *reserves the right* to waive any irregularities in any proposal, and *to reject any and all proposals*." [ECF# 83-12, Request for Proposal, pg. 5].  The RFP also stated that "failure to comply with the requirements of this RFP may result in rejection of a proposal, or the Town may decline to consider any such proposal. Bidders may include additional material or information in addition to the required responses to the RFP, but the Town reserves the right to make its selection solely on the criteria identified in this RFP." *Id*.

The RFP concludes with a warning in bold and underlined that states:

> **Notice to prospective bidders: Proposals should be based on strict compliance with the terms and conditions in the lease attachment. SSB reserves the right to modify the lease only for the purpose of clarification and/or to incorporate provisions which are of benefit to SSB. There are substantial changes in this agreement from the previous lease and failure to consider these changes in the proposal**

---

for an RFP, and arguably may have had an improper motive to recommend an RFP, ultimately the decision to use an RFP process was a decision unanimously voted on by elected officials following advice of their town attorney, whose advice was supported by a S.C. Attorney General opinion.

[5]    While the Town may have been financially better off to have had Plaintiff continue on the premises, and the Town ultimately lost rental income for over a year because of not having a tenant in place for some period of time, one could easily argue that if the Town did not try to use an RFP process, then that would be evidence of corruption or favoritism.  Here you had elected officials simply following their attorney's advice which, according to the S.C. Attorney General, was not only reasonable, but the prudent thing  to do in light of the basic purpose of the bidding requirements in public procurement.

6

**shall not excuse compliance. A primary and**
**secondary bid may be awarded.** *Id.*

An on-site meeting was held on May 3, 2010, for the purpose of allowing prospective bidders to examine the property. Though attendance at this meeting by prospective bidders was described as "mandatory," the Town's legal counsel took the position that the meeting was "mandatory" only in that the Town was mandated to allow prospective bidders an opportunity to examine the premises. Plaintiff contends, however, that the Town's Attorney changed the meaning of "mandatory" to further Booth's plan to take over the pier restaurant. No one other than Plaintiff attended this meeting, which was held at Plaintiff's place of business.

In a letter dated May 4, 2010, Booth resigned from his position as Town Administrator. [ECF# 84-3]. A new Town Administrator, Micki Fellner, was hired after Booth resigned.

On May 17, 2010, the Plaintiff submitted a bid for the lease. Instead of submitting the requested RFP information, Plaintiff simply submitted a copy of its current lease with a letter to Town Council advising that they would like to renegotiate their previous lease. [ECF# 84-7, Plaintiff's bid package]. Plaintiff argues that Mr. Cahill believed, under the circumstances, that he had, in good faith, submitted a bid that was responsive to the RFP. [ECF# 84-8, Affidavit of John Cahill].

Defendants Booth, Chandler, and Rempfer were each members of a limited liability company that sought to lease the pier restaurant under the name Surfside Café. Plaintiff alleges that Booth, Chandler, and Rempfer formed a conspiracy to oust Plaintiff from the pier so that they could run the pier restaurant themselves. Although Booth's involvement with the Surfside Café group was not initially disclosed to Town Council, it later came to light that Booth was involved with Surfside Café. Booth, along with Chandler and Rempfer, was a one-third (1/3) equity owner in

7

Surfside Café, and had prepared its bid.  The Articles of Organization of Surfside Café identifies its three (3) organizers as "Cecil Chandler," "Edwin Booth," and "William Rempfer."  All three signed the Articles of Organization.  The bid submitted by Surfside Café for the pier restaurant lease, however, did not list Booth but identified its three principals as "Cecil Chandler," "Evan Bofilios," and "William Rempfer."  Plaintiff alleges that Booth not only failed to identify himself as a principal in the bid; he included Mr. Bofilios as an alleged principal, and used Mr. Bofilios's years of experience as a restauranteur.  Mr. Bofilios allegedly told Cecil Chandler that he wanted nothing to do with this venture.

The Town received only two bids, Surfside Café and the Plaintiff's, and rejected both bids received as non-responsive. On May 27, 2010, Attorney Michael Smith advised the Town that it needed to re-bid the matter following the receipt of only non-responsive bids. [ECF# 64-9, Town Attorney Letter - May 28, 2010].

At the summary judgment hearing, Plaintiff's counsel argued that at the bid opening of May 25, 2010, the Mayor announced that both bids were non-responsive and therefore rejected.  Plaintiff further argues that at a meeting on May 10, 2011, the Surfside Café bid of Booth was rejected because of Booth's involvement and council was concerned about that having tainted the process. Plaintiff argues that Plaintiff's bid was really then the only qualified bid because Surfside Café was disqualified because of Booth's involvement, and that in reality Plaintiff then became the "sole source" restauranteur willing to lease at that point under the Town's procurement code.[6]

---

[6]       Assuming that Plaintiff's interpretation of "sole source" is correct, which is questionable given the fact that there are other restauranteurs and that ultimately another restauranteur leased the property, regardless, under § 2-210, the town administrator has "discretion" as to whether to waive procurement requirements.  Here, to the extent Plaintiff relies on "sole source" as establishing a property interest or legitimate claim of entitlement in obtaining a lease renewal, this argument still fails because the Town retained discretion to reject any and all proposals.

Plaintiff argues that its bid was responsive based on their argument that the Town already had most of the answers to the criteria used by the Town in its selection process and as a result Plaintiff's bid materially complied with the RFP. However, as discussed more fully below, whether Plaintiff's bid was materially compliant or responsive does not affect whether the Plaintiff had a "constitutionally protected property interest" sufficient to allow its federal claims to go forward as required under existing federal law. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005); *Sowell's Meats & Servs, Inc. v. McSwain*, 618 F. Supp. 140 (D.S.C. 1985), *aff'd*, 788 F.2d 226 (4th Cir. 1986).

In August 2010, the Town decided to ask for a second round of bids for the pier lease for which the Plaintiff was eligible to submit a bid. On September 29, 2010, Plaintiff's attorney submitted a letter posing questions related to the Town's RFP. [ECF# 85, Lieter letter - Sept. 29, 2010]. The Town provided written responses to the Plaintiff's letter. [ECF# 85-1, Response to Lieter letter]. After acknowledging their right to submit a bid and after receiving answers from the Town regarding their questions about the RFP, the Plaintiff decided not to submit a revised bid and withdrew itself from consideration of the pier lease. In a letter dated October 26, 2010, Plaintiff informed the Town that it was conceding the field and "withdrawing [its] previous bid for the restaurant and [would] not present a new one." [ECF# 85-2, Letter of John and Margaret Cahill to Town of Surfside Beach].

The Town did not receive any bids and, as a result, did not secure a lease through the second RFP bid request. In October 2010, the Town decided to request a third round of bids for the pier restaurant lease. No bids were submitted.

On November 23, 2010, the Town sought a S.C. Attorney General Opinion asking if the use

of request for proposal and public bidding process to solicit a bid was appropriate and, upon failing to secure a bid through the RFP, if the Town could use a broker to secure a tenant.  The Attorney General issued an opinion advising the use of RFPs was an appropriate method of soliciting lease applicants and that if the Town chose to use a broker upon the failure of the RFP to secure a tenant, this would also be lawful. [ECF# 64-14, Attorney General Office letter - January 14, 2011].

Plaintiff vacated the pier restaurant premises in December of 2010 and relocated its restaurant to Myrtle Beach. The Town ultimately hired a broker to secure a tenant for the pier restaurant.  Plaintiff contends it was never contacted by the broker.  On January 16, 2012, the Town leased the pier premises to a third party; however, the restaurant had stood vacant for approximately 13 months resulting in an obvious loss of rental income to the Town.

Because of Booth's involvement as Town Administrator during the time the RFP was being composed, and his subsequent bid submission after he left the Town's employment, the Town's Mayor requested an investigation by the Fifteenth Circuit Solicitor's Office.  The Solicitor's Office found that there was "insufficient evidence of any criminal wrongdoing on the part of Ed Booth or his associates." [ECF# 66-12, Deputy Solicitor letter - June 30, 2010].  The Solicitor's Office requested that the South Carolina Ethics Commission review the investigation for any potential ethical violations. *Id.*  As a result, the Ethics Commission conducted its own investigation and determined that there was not probable cause to indicate that Booth violated S.C. Code Ann. §§ 8-13-725 (Use or disclosure of confidential information by public official, member, or employee for financial gain; examination of private records; penalties), 8-13-755 (Restrictions on former public official, member, or employee serving as lobbyist or accepting employment in field of former service), 8-13-760 (Employment by government contractor of former public official, member, or

10

employee who was engaged in procurement), or 8-13-775 (Public official, member, or employee with official function related to contracts not permitted to have economic interest in contracts). *See* [ECF# 66-13, Decision and Order of the State Ethics Commission.] Accordingly, the Ethics Commission dismissed the charges that had been alleged against Booth. *Id.*

Plaintiff contends the Town did not require a similar pier tenant, Pier Outfitters, to go through the bid process before renewing its lease. The Town, however, notes that Plaintiff is mistaken concerning the Pier Outfitters lease. The Town states that unlike the Plaintiff's lease, Pier Outfitters, Inc., a/k/a "Lazy Gator" entered into a lease with Pier Properties, Inc., on February 29, 2008. The initial term of the lease ended December 31, 2012 and was automatically extended for an additional five (5) years through December 31, 2017, unless the tenant was in default or the tenant gave written notice not to renew. [ECF# 92-1, Lazy Gator Lease, pg. 2]. Due to an issue related to what was the "demised premise," the Town entered into an agreed amendment of the existing lease with Pier Properties, Inc. [ECF# 92-2, Deposition of Michael Smith, pg. 141]. Unlike the Plaintiff's lease, Pier Properties, Inc. had a number of years remaining under the terms of its original lease at the time of the amendment and the amendment did not extend the term of the original lease nor did it affect the lease payments.

## Discussion

I.    Equal Protection

In its brief in response to the motions for summary judgment, Plaintiff argues that it was treated differently than its neighbor at the pier, Pier Outfitters/Lazy Gator. Plaintiff argues that its right to equal protection was violated when the Town/Booth negotiated a new lease with Pier Outfitters rather than require them to go through the bidding process. Plaintiff stated "[h]ad the

11

Town entered into good faith negotiations with Nibils for a lease renewal, as it did with Pier Outfitters, it would not have violated Nibils' equal protection rights, even if those negotiations proved unsuccessful." [ECF #83, Plaintiff's memorandum in response to Defendants' motions for summary judgment, pg. 49].

The Equal Protection Clause of the Fourteenth Amendment "requires that the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose." *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).  Persons in different circumstances can be treated differently, but the classification of these persons must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Sylvia Development Corp.*, 48 F.3d at 818 (quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

To support an Equal Protection claim, Plaintiff must show: 1) the classification to which it belongs; 2) that the classification was the basis of the Town's decision; and 3) that the classification prompted the Town to engage in intentional, purposeful discrimination. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 329 (4th Cir. 2005).

In this case, Plaintiff does not allege membership in a class or group, but argues that it is a "class of one."  An Equal Protection claim can be brought by a "class of one," "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000); *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005).  For a plaintiff to demonstrate that it is similarly situated, the evidence "must show an

extremely high degree of similarity between [itself] and the persons to whom [it] compare[s]."

*Willis v. Town of Marshall, North Carolina*, 275 Fed.Appx. 227, 233 (4th 2008) (quoting *Clubside,*

*Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Here, Plaintiff has failed to identify a similarly situated entity that received differential

treatment.  Plaintiff argues that Pier Outfitters/Lazy Gator, Plaintiff's co-tenant at the pier, was

similarly situated.  However, unlike the Plaintiff's lease, which was set to expire on December 31,

2010 and contained no provision for any additional lease extensions or renewals, the Pier

Outfitters/Lazy Gator lease had a number of years remaining under the terms of its original lease.

Before the Town acquired the pier, both Plaintiff and Pier Outfitters/Lazy Gator initially

entered into leases with the private owners of the pier.  In 1986, the Plaintiff entered a lease for a

restaurant space located on the Surfside Beach Pier.  In 2001, while the pier was still under private

ownership, Plaintiff signed a new lease, replacing the 1986 lease.  The 2001 lease provided for an

initial lease period of March 1, 2001 through December 31, 2006 with an option period of January

1, 2007 through December 31, 2010, which the Plaintiff exercised.  The lease with the Plaintiff

ended on December 31, 2010, as Plaintiff had already exercised the only option to extend its lease.

Plaintiff's lease did not provide for any options to renew or extend the lease beyond December 31,

2010.

Pier Outfitters, Inc., a/k/a "Lazy Gator" entered into its lease on February 29, 2008.  The

initial term of the lease ended December 31, 2012 and was automatically extended for an additional

five (5) years through December 31, 2017. [ECF# 92-1, Lazy Gator Lease, pg. 2].  Due to an issue

related to what was the "demised premise," the Town entered into an agreed amendment of the

existing lease with Pier Properties, Inc. [ECF# 92-2, Deposition of Michael Smith, pg. 141].  The

amendment did not extend the term of the lease nor did it affect the lease payments. *Id*.

It is undisputed that Pier Outfitters/Lazy Gator did not obtain an extension or lease renewal extending the new lease term beyond the term of the original lease. No reasonable trier of fact could conclude that Plaintiff was similarly situated with Pier Outfitters/Lazy Gator and received differential treatment. Where the Plaintiff has failed to identify a similarly situated entity that received differential treatment, its Equal Protection claim fails. *See Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 440 (4th Cir. 2002). To the extent Plaintiff alleges an Equal Protection violation based on the Town's rejection of its bid, Plaintiff fails to show differential treatment since no other bidder's bid was accepted.

II.    Substantive and Procedural Due Process

Plaintiff argues that the Town violated its substantive and procedural due process rights by not directly negotiating a new lease and failing to award it a new lease under the public request for proposal. To establish a violation of substantive due process, a plaintiff "must demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency.'" *MLC Automotive, LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995)). "Substantive due process is a far narrower concept than procedural." *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995). The protection of substantive due process covers only state action which is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Sylvia Dev. Corp. v. Calvert County*,

14

*Md.*, 48 F.3d 810, 827 (4th Cir. 1995).

To state a claim for denial of procedural due process, Plaintiff must show that it 1) had property or a property interest, 2) of which the Town deprived it, 3) without due process of law. *Sylvia Dev. Corp.* 48 F.3d at 826.

The success of both of Plaintiff's due process claims depend on whether Plaintiff can establish a property interest in obtaining a lease renewal or extension of its original lease from the Town. In *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), the Supreme Court held:

> *To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Roth*, 408 U.S. at 577 (emphasis added).  More recently, the Supreme Court has held that "a benefit is not a protected entitlement if government officials may grant or deny it *in their discretion*." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005) (emphasis added); *see also Smith v. Ashcroft*, 295 F.3d 425, 429-30 (4th Cir. 2002) (stating "[t]here must be entitlement to the benefit as directed by statute, and the statute must 'act to limit meaningfully the discretion of the decision makers'").  Similarly, the Fourth Circuit has interpreted "legitimate claim of entitlement" to turn on whether the government exercised discretion in granting or denying some benefit. *Gardner v. City of Baltimore Mayor and City Council*, 969 F.2d 63, 68-69 (4th Cir. 1992).  In *Gardner v. City of Baltimore Mayor and City Council*, the Fourth Circuit adopted a standard recognizing a cognizable

15

property interest "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Gardner*, 969 F.2d at 68-69; *see also Mary's House, Inc. v. North Carolina*, 976 F. Supp. 2d 691, 705 (M.D.N.C. 2013); *Lanier Constr. Co. v. City of Clinton, North Carolina*, 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011) (holding disappointed bidders could not claim entitlement to a contract, and no property interest existed where the City Council was entitled to exercise a great deal of discretion in awarding the contract to the lowest responsible bidder).

First, as to Plaintiff's contention that the Town violated its substantive and procedural due process rights by not directly negotiating with it for a new lease, Plaintiff can demonstrate no more than a unilateral expectation or desire for the Town to directly negotiate the lease renewal or extension.  Plaintiff did not have a legitimate claim of entitlement to continue leasing the premises beyond the expiration of the lease on December 31, 2010.  Plaintiff agreed that under the terms of the lease that expired on December 31, 2010, the Town of Surfside Beach could refuse to do business with the Plaintiff after the lease ended. [ECF# 64-7, Deposition of John E. Cahill, pg. 98]. Plaintiff, therefore, cannot establish a property interest in obtaining a new lease, lease extension, or renewal through direct negotiation with the Town.   Importantly, there was nothing improper about the Town's decision to follow its normal procurement policies including a publicly advertised request for proposal.  The S.C. Attorney General's Office agreed and issued a letter stating that it shared in the Town attorney's conclusion that the Town must follow its normal procurement policies, found in Chapter 2 of the Town of Surfside Beach Code of Ordinances. [ECF# 64-14, Letter from S.C. Attorney General's Office dated January 14, 2011, pg. 3].  The Attorney General's Office stated that "[w]here the town is acting as a commercial landlord of property, the town must

16

seek tenants and lease renewals through its procurement procedures, including a publicly advertised RFP." *Id*.

Plaintiff also contends that the Town violated its substantive and procedural due process rights by rejecting its bid that was submitted in response to the publicly advertised request for proposal (RFP). Whether Plaintiff had a property interest in having its bid accepted turns on whether the Town had discretion to deny or reject Plaintiff's bid. As noted above, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Gonzales*, 545 U.S. at 756. To determine whether the Town had discretion to reject Plaintiff's bid for a new lease, consideration should be given to the relevant bid documents and municipal ordinances. *See, e.g. Expert Masonry, Inc. v. Boone County, Kentucky*, 440 F.3d 336, 350 (6th Cir. 2006) (reviewing county ordinances and bid documents to determine whether county had discretion to award the contract); *Garney Companies, Inc. v. City of Kansas City*, No. 99-0761-CV-W-5, 1999 WL 1697616, at *2-3 (W.D.Mo. Sept. 27, 1999); *Cleveland Constr., Inc. v. Cincinnati*, 888 N.E.2d 1068, 1071 (Ohio 2008). The bid documents in this case unquestionably give discretion to the Town to reject any and all proposals. The RFP states "[t]he Town reserves the right to waive any irregularities in any proposal, and to reject any and all proposals." [ECF# 83-12, Request for Proposal, pg. 5]. Similarly, the relevant municipal ordinances allow for discretion in the award of bids and the determination of bid exceptions such as the "sole source" exception. *See* [ECF# 83-8, Town of Surfside Beach Municipal Code, §§ 2-209, 2-210]. There are no local ordinances or provisions requiring or mandating that the bid be awarded to the lowest responsible bidder. The relevant local procurement code sections provide that "[t]he administrator shall submit bids, advertisements, minutes, bid tabulation, and administrator's recommendation to the mayor and town

17

council for review and award" and "[t]he administrator in his sole discretion shall award bids based on lowest and/or best bid for any budgeted item regardless of cost." [ECF# 83-8, Town of Surfside Beach Municipal Code, § 2-209(a)]. Since the Town had discretion to deny Plaintiff's bid under the relevant bid documents and local ordinances, Plaintiff cannot establish a property interest in obtaining a new lease through the bidding process. *See Gonzales*, 545 U.S. at 756. Plaintiff has not demonstrated anything more than a unilateral expectation or desire for the new lease and has fallen short of establishing a legitimate claim of entitlement to it. *See Roth*, 408 U.S. at 577.

Plaintiff, relying on *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238 (11th Cir. 1992), argues that its property interest in the award of the lease can be derived from the S.C. Consolidated Procurement Code, S.C. Code Ann. §§ 11-35-10 - 11-35-5270. Plaintiff argues that because the S.C. Consolidated Procurement Code required the restaurant lease to be awarded to the lowest responsive and responsible bidder, Plaintiff had a limited property interest in not having the bidding process applied in an arbitrary and capricious manner. *See Whitworth*, 951 F.2d at 1243. Specifically, Plaintiff relies on § 11-35-30, which "imposes an obligation of good faith," and § 11-35-1520, which states that "[u]nless there is a compelling reason to reject bids as prescribed by regulation of the board, notice of an award or an intended award of a contract to the lowest responsive and responsible bidders whose bid meets the requirements set forth in the invitation for bids must be given by posting the notice at a location specified in the invitation for bids." However, by its own terms, the S.C. Consolidated Procurement Code applies to procurement and expenditures by the State, not its political subdivisions. *See* S.C. Code Ann. § 11-35-40 ("This code applies to every procurement or expenditure of funds by this State..."). A separate section mandates that political subdivisions, such as the Town of Surfside Beach, "adopt ordinances and procedures

embodying sound principles of appropriately competitive procurement . . ." S.C. Code Ann. § 11-35-50.  The Town adopted its own procurement ordinances in Chapter 2 of the Town of Surfside Beach Code of Ordinances.[7]  The Town's procurement ordinances do not remove the Town's discretion and require that bids be awarded to the lowest responsive and responsible bidder, neither do the relevant bid documents.  The bid documents give absolute discretion and the ordinances do not remove that discretion.  Plaintiff has provided no authority for the proposition that the S.C. Consolidated Procurement Code overrides a local municipality's discretion to accept or reject any given bid submitted in response to a public request for bids.  Plaintiff, as a disappointed bidder for a municipal commercial lease, cannot derive a property interest from the S.C. Consolidated Procurement Code.[8]

Plaintiff argues that they were never afforded an appeal process and the Town's ordinances do not reference one.[9]  Assuming that is correct, Plaintiff must still first establish the

---

[7]        The Town's procurement ordinances do not indicate that the Town has adopted the entire S.C. Consolidated Procurement Code, but rather has its own procurement provisions.  However, Mr. Baxter, counsel for the Town, repeatedly indicated to the Court at the summary judgment hearing that the Plaintiff had not availed itself of remedies under the S.C. Consolidated Procurement Code, and that would be the route Plaintiff should have followed, i.e. Plaintiff should have filed an appeal with the Town if it disagreed with the procurement decision, then further appeal with the administrative law court.  However, the Town's ordinances submitted by the parties do not reference any appeal process available to a disappointed bidder.

[8]        Even if this Court were to accept Plaintiff's argument that the S.C. Consolidated Procurement Code applied to create a property interest, Plaintiff's claim still fails because it was afforded all process due in the form of the opportunity to participate in the second and third round of bids.  If the Town improperly rejected Plaintiff's initial bid as Plaintiff contends, the error was remedied when the Town decided to rebid the project and give Plaintiff another opportunity to submit a conforming bid.  Without even having to file a bid protest, Plaintiff was afforded one of the remedies provided to disappointed bidders by the S.C. Consolidated Procurement Code - rebidding the project. *See* S.C. Code Ann. § 11-35-4310 (stating "if. . .a solicitation or proposed award of a contract is in violation of law, then the solicitation or proposed award may be (a) canceled; (b) revised to comply with the law and rebid; or (c) awarded in a manner that complies with the provisions of this code").  Plaintiff cannot demonstrate that the procedures used by the Town were applied in an arbitrary or capricious manner.

[9]        Due process includes such things as notice, right to be heard, and a right to appeal. *See Roth*, 408 U.S. 564.

19

"constitutionally protected property interest" element to pursue its federal due process claim, which it cannot.

Plaintiff's case is analogous to *Sowell's Meats & Servs, Inc. v. McSwain*, 618 F. Supp. 140 (D.S.C. 1985), *aff'd*, 788 F.2d 226 (4th Cir. 1986), where the court held that a disappointed bidder could not establish a property interest to support a due process claim under § 1983 "where South Carolina law contains no provision defining the nature and extent of the plaintiff's alleged property interest." *McSwain*, 618 F. Supp. at 145. As in *McSwain*, there is no relevant statute or municipal ordinance that confers a property interest on unsuccessful bidders for the commercial lease with the Town in this case. *McSwain*, 788 F.2d at 228 (holding that "South Carolina law does not confer a property interest on unsuccessful bidders for public contracts").

As to the substantive due process claim, Plaintiff has failed to demonstrate that it was deprived of a constitutionally protected property interest. For that reason, Defendants are entitled to summary judgment on Plaintiff's substantive due process claim. Additionally, Plaintiff has failed to demonstrate that the Town's actions in following its procurement procedures and rejecting Plaintiff's bid were so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency. *See MLC Automotive, LLC v. Town of S. Pines*, 532 F.3d at 281.

With regard to the procedural due process claim, Defendants are also entitled to summary judgment as Plaintiff has failed to demonstrate it was deprived of a constitutionally protected property interest. Plaintiff's procedural due process claim also fails because Plaintiff was afforded due process when it was given the opportunity to submit a bid in the second and third round of publicly advertised requests for proposal. Plaintiff, however, declined to submit a bid. To prevail on a procedural due process claim, "a plaintiff must have taken advantage of the processes that are

20

available to him ..., unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000); *see also Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them."). Plaintiff voluntarily withdrew itself from consideration of the pier lease. On October 26, 2010, Plaintiff informed the Town that it was "withdrawing [its] previous bid for the restaurant and will not present a new one." [ECF# 85-2, Letter of John and Margaret Cahill to Town of Surfside Beach]. Plaintiff failed to take advantage of the processes that were available to him, i.e. participating in the second and third round of bids. Plaintiff cannot now claim the process was inadequate when it failed to avail itself of the procedures offered by the Town. *See Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 438 (4th Cir. 2002).

   For those reasons, Defendants are entitled to summary judgment on Plaintiff's substantive and procedural due process claims.

III.    Takings

   Plaintiff asserted a takings claim arguing that it had investment backed expectations and vested property rights in obtaining a new lease or lease extension. Plaintiff argues these property rights were taken by Defendants without just compensation. The Takings Clause of the Fifth Amendment provides that no "private property be taken for public use, without just compensation," and this limitation on governmental power has been imposed on the States through the Fourteenth Amendment. *Washlefske v. Winston*, 234 F.3d 179, 183 (4th Cir. 2000). "The Takings Clause *protects* private property; it does not create it." *Washlefske*, 234 F.3d at 183. A necessary requisite of a takings claim is the existence of a constitutionally protected property interest. *Id*. at 184. For

the reasons stated above, Plaintiff possesses no constitutionally protected property interest in the right to obtain a lease renewal or extension from the Town.  For that reason, Defendants are entitled to summary judgment on Plaintiff's takings claim.

IV.    <u>First Amendment Retaliation</u>

Plaintiff's brief in opposition to Defendants' motions for summary judgment raised a First Amendment retaliation claim for the first time.  Plaintiff's First Amendment claim is based on alleged speech by Mrs. Butwin (Cahills' daughter and non-party) challenging the parking meter system in the pier parking lot.  Defendants argue that "a plaintiff may not raise a new theory of liability for the first time, after the close of discovery, in [its] opposition to summary judgment without amending his complaint." *United States ex rel. DRC. Inc. v. Custer Battles, LLC,* 472 F. Supp. 2d 787, 796 n. 11 (E.D.Va. 2007) (quoting *Matthews v. Xerox Corp.,* 319 F.Supp.2d 1166, 1172 (S.D.Cal. 2004)); *see also Cloaninger v. McDevitt,* 555 F.3d 324, 336 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."). Plaintiff's complaint does not mention or reference the First Amendment or allege any protected speech or retaliatory action adversely affecting constitutionally protected speech. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000).  The deadline to file motions to amend pleadings was January 31, 2014.  Notably, Plaintiff filed a motion to amend its complaint but did not seek to add a First Amendment claim.[10]  Plaintiff's claims cannot be a moving target. Accordingly, the Court finds that Plaintiff did not plead a First Amendment Retaliation claim and will not be permitted to amend its complaint at this late date without a showing of good cause,

---

[10]    Plaintiff's motion to amend sought to add the Cahills as individual plaintiffs and was denied as futile. *See* Text Order denying motion to amend. [ECF# 46].

22

which Plaintiff has not done.  *See Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997).

V.    Civil Conspiracy

Plaintiff alleged claims for civil conspiracy under 42 U.S.C. §§ 1983 and 1985.  To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Plaintiff's deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).  A conspiracy action pursuant to § 1983 requires the plaintiff to demonstrate "an actual denial of a federally protected right." *Gray v. Laws*, 915 F. Supp. 762, 763 (E.D.N.C. 1994).  As discussed above, the Court granted summary judgment with respect to each of Plaintiff's claims in which it alleged the denial of a federally protected right.  Since Plaintiff has failed to establish a violation of a federal right either by way of its equal protection claim or by way of a constitutionally protected property interest on its other federal claims, summary judgment is due to be granted on Plaintiff's civil conspiracy claim under § 1983. *See Gray*, 915 F. Supp. 763-64; *Sattler v. Johnson*, 857 F.2d 224, 226-27 (4th Cir. 1988).

With respect to the civil conspiracy claim under § 1985, Plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985).

23

Here, Plaintiff cannot demonstrate the requisite "class-based, invidiously discriminatory animus" to prevail on this cause of action.  The Plaintiff has failed to identify the class at issue or explain how it has been treated differently than other similarly situated persons.  As discussed above, Plaintiff cannot demonstrate that it should qualify as a "class of one" because it cannot identify a similarly situated entity that received differential treatment.  As § 1985 is directed towards equal protection claims, a Plaintiff must set forth facts to show that "some racial, or perhaps otherwise class-based, invidious discriminatory animus lay behind the alleged conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 145 (2nd Cir. 1999); *see also Smith v. Coffy*, No. 2:08–CV–201–RMG, 2011 WL 2418528, *3 (D.S.C. June 13, 2011).  To meet the requirement of a class-based discriminatory animus, under this section the class must possess the "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Bellamy v. Mason's Stores, Inc.*, 368 F.Supp. 1025, 1028 (E.D.Va. 1973), *aff'd*, 508 F.2d 504 (4th Cir. 1974).  Because the Plaintiff cannot make such a showing in this case, its claim for civil conspiracy pursuant to 42 U.S.C. § 1985 fails.

Plaintiff argues that it has also pled a state law claim for civil conspiracy.  Because this Court has dismissed all causes of action over which it has original jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over any state tort claims that may have been pled.  To the extent Plaintiff's complaint alleges a state law claim for civil conspiracy, the claim is remanded to the Horry County Court of Common Pleas.[11]

VI.    <u>Tortious Interference with Contractual Relations</u>

---

[11]    Whether Plaintiff's complaint alleges a state law claim for civil conspiracy and whether Plaintiff should be permitted to amend its complaint is a decision better suited to a state court judge interpreting state court rules.

24

Plaintiff's complaint alleges tortious interference with contractual relations in violation of 42 U.S.C. § 1983. Plaintiff claims Defendants tortiously interfered with its right to obtain a new lease or extension of its existing lease. Specifically, Plaintiff's complaint alleges "that, as a direct and proximate result of Defendant's tortious interference with Plaintiff's contractual rights and interests, Plaintiff has suffered both actual and consequential damages, in violation and denial of Plaintiff's rights under color of law, in violation of Title 42, § 1983 USCA, for which Plaintiffs are entitled to an award of attorney's fees as provided in Title 42, § 1988, USCA." [ECF# 1-1, Complaint].

Title 42 U.S.C. § 1983 "is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

It is well established that not every tort under state law becomes a federally cognizable constitutional tort simply because it is committed by a state official under color of state law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980); *Schiller v. Strangis*, 540 F. Supp. 605, 616 (D. Mass. 1982). Plaintiff has provided no authority for the proposition that a state law claim for tortious interference with contractual or prospective contractual relations can serve as the basis for a federal civil rights case under 42 U.S.C. § 1983. At the hearing, Plaintiff argued that a § 1983 tortious interference with contract claim existed because

the Town of Surfside Beach was involved in the alleged tortious interference and allegedly denied Plaintiff's constitutional rights. The right to be free from tortious interference with prospective contractual relations is not a federal right guaranteed or protected by the Constitution. Plaintiff's claim for tortious interference with prospective contractual relations is, therefore, not cognizable under § 1983. *See Baker*, 443 U.S. at 146-47.

Plaintiff argues that it has a co-equal state law claim for tortious interference with prospective contractual relations. Because this Court has dismissed all causes of action over which it has original jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over any state tort claims that may have been pled. To the extent Plaintiff's complaint alleges a claim for tortious interference with prospective contractual relations, the claim is remanded to the Horry County Court of Common Pleas.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' [ECF## 64, 65, 66, and 72] motions for summary judgment. Specifically, the Court grants Defendants' motions for summary judgment as to all federal claims including the claims for denial of equal protection, substantive due process, procedural due process, tortious interference with contractual relations under 42 U.S.C. § 1983, and civil conspiracy under 42 U.S.C. §§ 1983 and 1985. Plaintiff's attempt to assert a First Amendment retaliation claim fails as the claim was not pled in the complaint and cannot be asserted at this late date. The Court denies the motions for summary judgment as to any state law claims and declines to exercise supplemental jurisdiction over the remaining state law claims for tortious interference with prospective contractual relations and civil conspiracy. The remaining state law claims for tortious interference with prospective contractual

26

relations and civil conspiracy are hereby **REMANDED** to the South Carolina Court of Common

Pleas for Horry County, South Carolina.  A certified copy of this Order of Remand shall be mailed

by the Clerk of this Court to the Clerk of the Court of Common Pleas, Horry County, South

Carolina.


May 21, 2015                                          s/ R. Bryan Harwell
Florence, South Carolina                             R. Bryan Harwell
                                                     United States District Judge

27